**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAMES SWIFT,                                    )
                                                )
                    Plaintiff,                  )
                                                )
            v.                                  )          Civil Action No. 08-275
                                                )
MCKEESPORT HOUSING AUTHORITY                    )
                                                )
                    Defendant.                  )

**MEMORANDUM OPINION AND ORDER**

<u>CONTI</u>, District Judge

**I.  Introduction**

        Pending before the court is the motion to dismiss (the "Motion") (Docket No. 14) filed on

April 3, 2009, by defendant McKeesport Housing Authority ("MHA" or "defendant").  In the

Motion defendant seeks to dismiss all the claims set forth in the complaint (Docket No. 2) filed,

pro se, by James Swift ("Swift" or "plaintiff"),  including the claims filed pursuant to 42 U.S.C.

Section 1983 ("§ 1983"), asserting violations of, among others, the Due Process Clause of the

Fourteenth Amendment and Section 8 ("Section 8") of the United States Housing Act ("USHA"),

as amended, 42 U.S.C. § 4237(f).  On April 10, 2009, plaintiff filed a response and new matter

(Docket No. 17) to the Motion, including a request to appoint counsel.  (<u>Id.</u>)  After considering

the parties' submissions, and for the reasons set forth below, the court will grant the Motion.

Plaintiff is given leave to file an amended complaint within thirty days of the date of this opinion.

The court, however, will deny with prejudice plaintiff's request for punitive damages.

## II. Background[1]

Plaintiff is a citizen of the United States and a resident of Allegheny County, Pennsylvania, who was eligible for and participated in the Housing Choice Voucher Program (the "voucher program") administered by defendant pursuant to Section 8 of the USHA and its implementing regulations at 24 C.F.R. pt. 982.  (Compl. ¶¶ 8, 15, 17.)  Defendant is a public housing authority ("PHA") and a public corporation.  (Id. ¶ 16.)  In Pennsylvania, the Section 8 voucher program is created and organized in accordance with the provisions of the Pennsylvania Housing Authorities Law, 35 PA. CONS. STAT. § 1541 et seq.  (Id.)

Plaintiff alleges that, prior to the anniversary of plaintiff's 2006 recertification[2] for a Section 8 voucher, a MHA employee and the employee's relative expressed to plaintiff adverse and inflammatory remarks about plaintiff's faith and disabilities, made repeated false statements to authorities about plaintiff, and sent plaintiff a letter through an attorney expressing a desire to sue plaintiff.  (Id. ¶ 18.)

On January 4, 2006, defendant mailed plaintiff a notice regarding plaintiff's yearly recertification application for the Section 8 voucher program.  (Id. ¶ 19.)  On January 6, 2006, plaintiff received the notice, with an instruction to return all forms to defendant by mail or in person by January 17, 2006.  (Id.)  Plaintiff telephoned defendant and was told that he would have plenty of time to comply, since MHA is required to send out two requests every year.  (Id.)

---

[1]     The background is a summary of the allegations in plaintiff's complaint.

[2]     Participants in the Section 8 voucher program are obligated to supply any information requested by the PHA or the Department of Housing and Urban Development ("HUD") for use in a regularly scheduled reexamination or interim reexamination of family income and composition in accordance with HUD requirements.  24 C.F.R. § 982.551(b)(2).

On February 10, 2006, defendant mailed to plaintiff a final request for the reexamination information and directed plaintiff to supply his recertification application information within five days.  (Id. ¶ 20.)  Plaintiff claims that the five-day deadline did not afford him the minimal sixty-day compliance period.  (Id.)  On February 13, 2006, plaintiff delivered his recertification application to the place he believed to be MHA's front door, which was the same place he had delivered his recertification application the prior year.  (Id. ¶ 21.)  Defendant's surveillance video cameras recorded plaintiff's delivery on that date.  (Id.)  On February 16, 2006, MHA wrote plaintiff a letter denying receipt of the recertification application and terminated plaintiff from the Section 8 voucher program.  (Id. ¶ 22.)

On February 18, 2006, plaintiff received defendant's notice of termination and immediately telephoned defendant.  (Id. ¶ 23.)  Defendant denied timely receipt of plaintiff's recertification application on February 15, 2006, but indicated receipt of plaintiff's recertification application on February 16, 2006.  (Id.)  Defendant told plaintiff that he should have telephoned and asked for more time.  (Id.)  On February 18, 2006, after communicating with defendant, plaintiff faxed MHA complete copies of the application and recertification information and requested that MHA internally investigate the whereabouts of his alleged timely delivered package. (Id. ¶ 24.)

On February 20, 2006, MHA mailed plaintiff a letter indicating that the only avenue of remedy was for plaintiff to request an informal hearing.  (Id.)  On February 21, 2006, plaintiff sent MHA a letter by facsimile requesting an informal hearing.  Subsequently, plaintiff sent defendant several facsimiles and voice mails about his request to which MHA did not respond. (Id. ¶ 27.)

3

On March 3, 2006, plaintiff personally visited MHA's office and was told:

> You didn't get it in, in time. You did it after Thursday. We are not
> a bank. The front doors have nothing to do with us.  Those
> documents eventually got to us. They must be on time. You're
> lucky that we are a small and not a large PA.  We deal with too
> many. There are too many on the waiting list.  You did this before.
> We have the camera tape. If you would have called, we could have
> extended the time.

(Id. ¶ 28.) (internal quotation marks omitted).  Defendant indicated that a panel of three to five

people would make a decision.  (Id.)

On March 9, 2006, an informal hearing was held and tape recorded at the office of MHA.

(Id.)  At the hearing plaintiff was questioned.  He was not allowed, however, any opportunity to

cross-examine or present supportive documentation.  The same MHA personnel who accused

plaintiff of untimely submitting his recertification application were in control of the hearing.

(Id.)  A review of MHA's time-stamped video tape affirmed plaintiff's delivery of the application

on February 13, 2006.  MHA asserted that plaintiff had been late in submitting documentation in

the past and that it did not like the way plaintiff signed documents.  (Id.)  Defendant denied that

the front door to the building had anything to do with MHA.  (Id.)

At the end of the informal hearing, plaintiff asked to use the rest room and was instructed

to leave the building by going out the back door and reentering the building through the front

door.  (Id. ¶ 29.)  The front door of the building was in direct view of a MHA surveillance

camera and had MHA notices in the window.  There was a garbage can by the front door which

had a MHA logo on it.  There was nothing to indicate that the door did not belong to MHA.  (Id.)

4

MHA indicated that a written determination would be mailed out within five days of the date of the informal hearing and claimed to have timely mailed its decision to two addresses.  (Id. ¶¶ 31, 33.)  Plaintiff maintains, however, that he did not receive MHA's letter of determination until April 26, 2006.  (Id. ¶ 33, 35.)  In the interim, plaintiff contacted the United States Postal Service to initiate a trace on the two missing letters from MHA.  (Id. ¶ 34.)  Plaintiff alleges that the letter he received from defendant on April 26, 2009 was back dated to March 14, 2006.  (Id. ¶ 35.)

The letter of determination sent by MHA indicated that MHA terminated plaintiff from the Section 8 voucher program based, in part, on MHA's requirement to mail out two requests notices for information each year, and that the front door to the MHA building was not MHA's front door, but rather that of "Family Service Center."  (Id.)  Defendant did not notify plaintiff of any appellate procedure.  (Id.)  On April 27, 2006, plaintiff faxed and e-mailed to MHA a three-page letter asking twelve questions.  (Id. at 37.)  As of the date of the filing of the instant complaint, defendant had not responded.  (Id. ¶ 38.)

Plaintiff argues that because MHA's regulations require MHA to initiate the process of reexamination ninety to one hundred twenty days before the anniversary date of March, he was not permitted the proper or the same amount of time allowed to other Section 8 voucher participants of different religions or who lack a disability and that his Section 8 benefits were terminated without providing him a fair and proper informal hearing.  (Id. ¶ 8.)  Plaintiff contends that defendant's actions demonstrate policies and practices that violate the USHA and its implementing regulations, the Due Process Clause of the Fourteenth Amendment to the

United States Constitution, the Civil Rights Act of 1871, § 1983 and defendant's administrative plan. (Id. ¶¶ 2-9, 41.)

Plaintiff seeks declaratory and injunctive relief, restitution, compensatory and punitive damages, and recovery of attorney's fees arising from defendant's alleged policies and practices that plaintiff claims deprived him of property rights available to him under the Section 8 voucher program. (Id.¶ 10.) MHA's alleged policies and practices include: 1) not allowing plaintiff enough time to collect information and submit his recertification application by delaying required notices and shortening time allowances in violation of MHA's written regulations, 2) denying that MHS's front door has anything to do with MHA, 3) denying receipt of plaintiff's correspondence by MHA that was delivered to MHA's front door, 4) creating an unlawful architectural barrier by failing to have a mailbox, drop box, letter slot or other device to accept correspondence, 5) thwarting or ignoring telephone calls and facsimile transmissions, 6) ignoring plaintiff's request for impartial grievance procedures, including a proper grievance tribunal, 7) fabricating allegations against plaintiff at the grievance hearing subsequent to the single previous issue of the untimely delivery of the MHA application, 8) acting with bias, intimidation and discrimination against plaintiff at the grievance hearing, including use of a tribunal of people partial to MHA to hold the grievance hearing, 9) denying a timely written determination at the time of the hearing, 10) omitting notice of plaintiff's appellate rights, 11) hiring a local official to inspect plaintiff's home, 12) sharing plaintiff's protected personal and private information related to his health disabilities and religion with individuals, including employees of MHA and others, 13) fabricating and enforcing regulations outside the regulatory requirements of the Section 8 voucher program, and 14) terminating plaintiff's Section 8 voucher

benefits before defendant resolved plaintiff's objections to the termination of his benefits as expressed in plaintiff's grievance proceedings.  (Id. ¶¶ 2-7, 10, 43.)

Defendant filed a motion to dismiss all plaintiff's claims, which is the subject of this opinion.

### III.  Legal Standards

A motion to dismiss tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits. When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and views them in a light most favorable to the plaintiff.  U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motion to dismiss, a complaint must provide "more than labels and conclusions."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level" and sufficient to state a claim for relief that is plausible on its face. Id. at 555-56.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

> The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. (quoting Twombly, 550 U.S. at 557) (internal citations omitted).

Two working principles underlie Twombly.  First, with respect to mere conclusory statements, a court need not accept as true all the allegations contained in a complaint.  Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555.)  Second, to survive a motion to dismiss, a claim must state a plausible claim for relief.  Id. at 1950.  Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  Id.

> But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

Id. (quoting FED. R. CIV. P. 8(a)(2)).  A court considering a motion to dismiss may begin by identifying allegations that are not entitled to the assumption of truth because they are mere conclusions.

> While legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id.

"A document filed pro se is 'to be liberally construed,' . . . and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S.

97, 106 (1976)) (internal quotation marks omitted in original).  "All pleadings shall be so construed as to do substantial justice."  Id.

## IV.  Discussion

Defendant argues that plaintiff's § 1983 claims are barred by the statute of limitations to the extent that they are based on events which occurred prior to February 25, 2006, two years prior to the date plaintiff filed the instant matter on February 25, 2008.  (Mot. ¶ 3.)  Defendant argues that plaintiff failed to state sufficient § 1983 claims with respect to plaintiff's rights afforded under the USHA and his rights under the Fourteenth Amendment to the United States Constitution.  (Id. ¶ 4.)

Defendant reasons that neither the USHA nor the regulations which govern the Section 8 voucher program require defendant to implement procedures for the distribution of correspondence, to respond to correspondence within a certain period of time or to establish a mailbox, drop box or letter slot.  Defendant contends that the USHA and the regulations which govern the Section 8 voucher program do not designate information which is provided by applicants or recipients of Section 8 benefits as confidential.

Defendant argues that none of plaintiff's claims implicate an interest protected by the Fourteenth Amendment to the Constitution.  (Def.'s Br. 5.) (Docket No. 15.)  Defendant further argues that plaintiff cannot recover punitive damages because defendant is a municipal entity (Mot. ¶ 5) and that plaintiff is not entitled to recover attorney's fees because he is represented pro se.  (Id. ¶ 6.)

The court will address separately, 1) defendant's statute of limitations defense, 2) the sufficiency of the complaint with respect to plaintiff's claims filed pursuant to § 1983, 3) plaintiff's seeking of punitive damages, 4) plaintiff's request for recovery of attorney's fees, and 5) plaintiff's request for the appointment of counsel.

**A**.     **Statue of Limitations Defense**

The United States Court of Appeals for the Third Circuit has recognized that a district court may consider whether a claim is barred by the statute of limitations in the context of a motion to dismiss where the viability of that defense may be discerned from the complaint itself, i.e., where the facts as pled demonstrate that the claim was not timely filed.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).  State law controls which statute of limitations is applied in a § 1983 action.  Jennings v. Shuman, 567 F.2d 1213, 1216 (3d Cir. 1977); Elliott Reihner Siedzikowski & Egan, P.C. v. Pa. Employees Benefit Trust Fund, 161 F. Supp.2d 413, 420 (E.D. Pa. 2001), aff'd 29 F. App'x 838 (3d Cir. 2002).  In Pennsylvania, a § 1983 claim is subject to a two-year statute of limitations.  Id. at 421.

While state law controls which statute of limitations is applied in a § 1983 action, federal law determines when a claim accrues.  Id.  The statute of limitations for a § 1983 action begins to run from the time that a plaintiff knows, or has reason to know, of any injury which is the basis of the action.  Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1988); Elliott, 161 F. Supp.2d at 420-21.  A claim accrues upon awareness of an actual injury, not upon awareness that the injury constitutes a legal wrong.  Elliott, 161 F. Supp.2d at 421.

Defendant relies on Elliott and Montgomery to support its argument that plaintiff's claims are barred by the statute of limitations to the extent that they are based upon events which

occurred prior to February 25, 2006.  Plaintiff filed the instant complaint on February 25, 2008.

The earliest date plaintiff could have been apprised of defendant's <u>final</u> determination with

respect to plaintiff's Section 8 voucher, however, would have been upon the receipt of MHA's

letter to plaintiff, dated March 14, 2006.  Until that time, plaintiff could not have known whether

defendant was going to reconsider its decision to terminate plaintiff's Section 8 voucher.  On

March 3, 2006, defendant told plaintiff that a panel of three to five people would make a

decision.  By letter dated March 14, 2006, defendant first indicated its determination not to

reconsider the termination of plaintiff's Section 8 voucher, which is the injury underlying

plaintiff's § 1983 claims relating to the Due Process Clause and Section 8.  Applying a two-year

statute of limitations, plaintiff had at least until March 14, 2008 to file his complaint.  Therefore,

considering only the allegations in the complaint, plaintiff's § 1983 claims relating to the Due

Process Clause and Section 8 are not barred by the statute of limitations.[3]

B.      **Section 1983 Claims**

1.      **General Framework**

Section 1983 authorizes private parties to enforce their federal constitutional rights and

some federal statutory rights against defendants who acted under color of state law.  Section 1983

provides in part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party

---

[3]      Plaintiff in conclusory terms raised generic claims under the Constitution and the
Civil Rights Act of 1871, but without factual allegations the court cannot, at this juncture, assess
whether those are plausible claims barred by the statute of limitations.

> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.

In order to state a claim pursuant to § 1983 a plaintiff must allege the following three elements: 1) defendant was a person; 2) defendant acted under color of state law; and 3) defendant's actions caused a deprivation of a right guaranteed by the United States Constitution or a federal law. Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997). "[M]unicipalities and other local government units [are] to be included among those persons to whom § 1983 applies." Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978). A municipality, however, is not liable for the actions of its employees or agents unless the plaintiff seeking to establish that a municipality is liable under § 1983 shows that the deprivation of his federal right was attributable to the enforcement of a municipal custom or policy. Id. at 691-94.

## 2.      Municipal Liability

Plaintiff asserts claims against defendant under § 1983. Defendant is a Pennsylvania public corporation and housing authority created pursuant to the Pennsylvania Housing Authorities Law. See Staten v. Hous. Auth. of Pittsburgh, 469 F.Supp. 1013, 1015 (3d Cir. 1979); see also Rivera v. Reading Hous. Auth., 819 F.Supp. 1323, 1326 (E.D. Pa. 1993). Under the Pennsylvania Housing Authorities Law, a "housing authority" is defined as:

> a public body and a body corporate and politic created and
> organized, in accordance with the provision of this act, for the
> purposes, with the powers, and subject to the restrictions
> hereinafter set forth.

35 PA. CONS. STAT. § 1543. In Wright v. Philadelphia Housing Authority, No. Civ. A. 94-1601, 1994 WL 597716, at *3 (E.D. Pa. Nov. 1, 1994), the district court considered whether a housing

authority, like defendant here, is a municipality and as such could be sued under § 1983.  The district court concluded that a municipal housing authority is a municipal corporation.  See Solomon v. Phila. Housing Auth., 143 F. App'x 447, 456 n.14 (noting that Wright was a "well-reasoned" opinion, court of appeals concluded that the housing authority was subject to suit under § 1983 and applied the Monell analysis to the housing authority, i.e., the defendant housing authority was not liable unless its policy or custom caused the alleged deprivation of federally protected rights).  Defendant, like the Philadelphia Housing Authority, is a municipality.  Plaintiff will need to show that the alleged deprivations were the result of a custom or policy of defendant.

There is no respondeat superior theory of municipal liability and a municipality, such as a city or public housing authority, may not be held vicariously liable under § 1983 for the actions of its agents.  Monell, 436 U.S. at 691; see Solomon, 143 F.App'x at 456 n.14.  This court must consider "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional [or federal statutory] deprivation."  Canton v. Harris, 489 U.S. 378, 388 (1989).  A "plaintiff must identify a municipal policy or custom that amounts to deliberate indifference to the rights of people . . . ."  Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004) (citing Canton v. Harris, 489 U.S. at 388).  Deliberate indifference is the result of "'a deliberate choice to follow a course of action [that] is made from among various alternatives' by city policymakers."  Canton, 489 U.S. at 389 (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality) (Brennan, J.)).  "[I]t is a particularly wilfull type of recklessness that is inherent in the deliberate indifference standard."  Simmons v. Phila., 947 F.2d 1042, 1060 n.13 (3d Cir. 1991).  That indifference must be attributed to "lawmakers or other officials with the

13

authority to make municipal policy." Id. at 1059.  A  municipality may only be held liable if its policy or custom is the "moving force" behind a constitutional violation.  Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006).

In McTernan v. City of York, Pennsylvania, 564 F.3d 636 (3d Cir. 2009), the court of appeals stated:

> Our jurisprudence is clear that "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom."

McTernan, 546 F.3d at 657 (quoting Beck v. Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)).  A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "'so permanent and well-settled' as to virtually constitute law.'"  Beck v. Pittsburgh, 89 F.3d at 971 (quoting Andrews v. Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).  A custom need not be "formally approved by an appropriate decisionmaker," but must be "so widespread as to have the force of law."  Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003).

In McTernan, the court of appeals described the "two-path track" to municipal liability: policy or custom.  A policy may be shown "when 'a decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy or edict."  McTernan, 564 F.3d at 658 (quoting Andrews, 895 F.2d at 1480).  To show custom there must be "'such practices of state officials . . . so permanently and well-settled' as to virtually constitute law."  Id.  A "[c]ustom requires proof of knowledge and acquiescence by the decisionmaker."  Id.

14

The Court of Appeals for the Third Circuit described three ways in which a plaintiff may

show municipal liability under § 1983:

> a municipality may only be liable for the torts of its employees in
> one of three ways: First, the municipality will be liable if its
> employee acted pursuant to a formal government policy or a
> standard operating procedure long accepted within the government
> entity, . . . second, liability will attach when the individual has
> policy making authority rendering his or her behavior an act of
> official government policy, . . . third, the municipality will be liable
> if an official with authority has ratified the unconstitutional actions
> of a subordinate, rendering such behavior official for liability
> purposes . . . .

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005) (citations omitted).

The Court of Appeals for the Third Circuit has held that "neither [an unconstitutional

municipal policy or custom] could be established absent conscious decisionmaking or

acquiescence in a longstanding custom or practice on the part of a policymaker." Id. at 1064

(citing Andrews v. Phila., 895 F.2d at 1481).  Negligence on the part of state officials is not

enough to impute liability under § 1983.  See generally Daniels v. Williams, 474 U.S. 327

(1986).

The Court of Appeals for the Third Circuit noted:

> A city may be held liable for an official policy or a custom which
> proximately causes a constitutional deprivation. A single incident
> violating a constitutional right done by a governmental agency's
> highest policymaker for the activity in question may suffice to
> establish an official policy.. . .  A single incident by a lower level
> employee acting under color of law, however, does not suffice to
> establish either an official policy or a custom.  However, if custom
> can be established by other means, a single application of the custom
> suffices to establish that it was done pursuant to official policy and
> thus to establish the agency's liability. . . .  Custom may be established
> by proof of knowledge and acquiescence. . . .

15

<u>Fletcher v. O'Donnell</u>, 867 F.2d 791, 793-94. (3d Cir.1989) (citations omitted) (emphasis added).

In the instant case, plaintiff in a conclusory fashion alleges that MHA is liable under §
1983 because MHA has a policy or custom that led to the deprivation of plaintiff's rights
afforded by the Fourteenth Amendment and the USHA and recites a number of circumstances,
which he asserts violated his rights under the Constitution and Section 8.

To support his claim, plaintiff alleged that a MHA employee and the employee's relative
expressed to plaintiff adverse and inflammatory remarks about plaintiff's faith and disabilities,
made repeated false statements to authorities about plaintiff, and sent plaintiff a letter through an
attorney expressing a desire to sue plaintiff.  Plaintiff alleged that MHA's policies and practices
deprived him of property rights available to him under Section 8 voucher program.  Plaintiff
alleged that he was not permitted the proper or the same amount of time allowed to other Section
8 voucher participants of different religions or who lack a disability and that his Section 8
benefits were terminated without providing him a fair and proper informal hearing, before
determining the outcome of plaintiff's grievance proceedings.

Plaintiff's allegations, however, are mere conclusions that policies or practices exist.
Conclusory allegations are not entitled to assumption of truth.  <u>Twombly</u>, 550 U.S. at 555.
Liberally construing the alleged facts, the court would have to speculate whether these specific
circumstances were a single instance or part of an official policy or custom.  Plaintiff failed to
implicate one of the three ways the Court of Appeals for the Third Circuit identified as necessary
to show municipal liability for the actions of the municipality's employees.  First, plaintiff did
not identify a policy or procedure long accepted by defendant, i.e., plaintiff did not set forth
factual allegations concerning any similar incidents that have occurred in the past to prove some

16

pattern of conduct or identify a specific municipal ordinance or regulation that could establish a

custom or policy.  Second, plaintiff did not set forth factual allegations concerning the identity of

the MHA employee who made the decision to terminate plaintiff's Section 8 voucher or

concerning the policy making authority of the employee who was ultimately responsible for the

decision to terminate plaintiff's voucher.  Whether one has the authority to formulate official

municipal policy is a matter of state law.  Simmons, 947 F.2d at  1061-62.  Third, plaintiff did

not set forth any factual allegations that show an official with authority ratified the alleged

violations.  Therefore, the court cannot conclude that the complaint raises a plausible claim that

municipal liability can attach to MHA.  Iqbal, 129 S. Ct. at 1950.  Because plaintiff did not

sufficiently state a claim under § 1983 for municipal liability, the court will grant defendant's

Motion to dismiss plaintiff's  § 1983 claims without prejudice.  Plaintiff may file an amended

complaint within thirty days; provided, that plaintiff is able to set forth a sufficient factual basis

to support a plausible claim for municipal liability.

        Due to plaintiff's failure to set forth a plausible claim for municipal liability, the court

need not address the sufficiency of allegations relating to alleged violations of plaintiff's

constitutional rights under the Due Process Clause of the Fourteenth Amendment, under Section

8[4] with respect to defendant's alleged discrimination related to plaintiff's health disability and

---

[4]        The court notes there is no express or implied right of action under section 8 of
the USHA.  The threshold inquiry is whether a claim for violation of Section 8 can only be
brought under § 1983, which requires the need to show a sufficient factual basis for municipal
liability, or if there is an express or implied right of action under the USHA.  Congress grants
individuals a private right of action by either providing an express right to sue within the
language of the statute, or by implying a private right to sue.  Section 8 of the USHA does not
contain an express private right of action.  The question, therefore, is whether or not there is an
implied private right of action to sue for violations of Section 8.  Neither the Supreme Court nor
the Court of Appeals for the Third Circuit has addressed whether there is an implied right of
action for claims under Section 8 of the USHA.

religion or any other specific federal statute or constitutional right.  The court, therefore, will not

discuss the allegations in the complaint relating to those claims.

## C.      State claims

Plaintiff alleges that defendant established a policy that allowed protected personal,

private and otherwise confidential information of the plaintiff to be shared with MHA's

employees, local officials and plaintiff's neighbors, including plaintiff's health disabilities and

---

Other courts of appeals and district courts have addressed this issue and determined that there is no implied private right of action under Section 8.  See, e.g., Banks v. Dallas Hous. Auth., 271 F.3d 605, 611 (5th Cir. 2001) (finding no private right of action to enforce § 1437f(e) of USHA); Salute v. Stratford Greens Garden Apts., 136 F.3d 293, 298-99 (2d Cir. 1998) (doubting that an implied private right of action in favor of a Section 8 certificate holder existed under the statute); Edwards v. Dist. of Columbia, 821 F.2d 651 (D.C. Cir. 1987); Brown v. Hous. Auth. of McRae, 784 F.2d 1533 (11th Cir. 1986) (tenants had no implied private right of action against city housing authority, its executive director and board of commissioners to enforce 42 U.S.C. § 1437a of USHA); Hill v. Group Three Hous. Dev. Corp., 799 F.2d 385, 394 (8th Cir. 1986); Perry v. Hous. Auth. of Charleston, 664 F.2d 1210, 1218 (4th Cir. 1981); Modica v Reyna, No. 1:08-CV-871, 2009 WL 2827975, at *9 (E.D. Tex. Sept. 2, 2009) (finding no implied private right of action to sue under Section 8); Kirby v. Richmond Redevelopment and Hous. Auth., No. 3:04-cv-791, 2005 WL 5864797, at *7 (E.D. Va. Sept. 28, 2005) (no implied private right of action exists under 42 U.S.C. §1437f of USHA for a Section 8 voucher holder against a public housing authority to force a tenant's landlord to comply with housing quality standards); Rodgers v. Garland Hous. Agency, No. Civ. 3:01-CV-0477-H, 2001 WL 1029516, at *3 (N.D. Tex. Aug. 21, 2001) ("numerous decisions support the conclusion that the United States Housing Act of 1937 does not permit an implied private right of action under section 8 programs"); Green v. Konover Residential Corp., No. 3:95CV1984, 1997 WL 736528, at *9 (D. Conn. Nov. 24, 1997) (holding no private cause of action under USHA. or the implementing regulations against a private landlord under 42 USHA § 1437, seeking affirmative money relief.)

This court is persuaded by the rationales of Banks, Salute, Brown, and Modica that there is no implied private right of action under Section 8 of the USHA.  Therefore, the court will grant defendant's motion to dismiss plaintiff's claims against MHA to the extent that plaintiff is seeking to assert an implied right of action under Section 8 of USHA.  Plaintiff must seek relief for a violation of Section 8 under the enabling provisions of § 1983.  Wright v. Roanoke Redevelopment and Hous. Auth., 479 U.S. 418 (1987) (concluded housing project tenants could bring an action under § 1983 against housing authority for violations of the USHA).

religion in violation of the Constitution of the Commonwealth of Pennsylvania.  Plaintiff's

allegations concerning the establishment of a policy are mere conclusions.  Absent specific

factual allegations to support the conclusions, plaintiff's conclusions are not entitled to the

assumption of truth.  Twombly, 550 U.S. at 555.  Therefore, plaintiff's claims concerning an

alleged violation by defendant of the Constitution of the Commonwealth of Pennsylvania will be

dismissed without prejudice.  See Iqbal, 129 S.Ct. at 1950.

      **D**.    **Punitive Damages**

Plaintiff seeks to recover punitive damages from defendant.  Punitive damages, however,

can rarely, if ever, be recovered from a municipal entity in a § 1983 suit.  N.J. Coalition of

Rooming and Boarding House Owners v. Mayor and Council of Albury Park , 152 F.3d 217, 225

(3d Cir. 1998).  The Court of Appeals for the Third Circuit has recognized that Newport v. Fact

Concerts, Inc., 453 U.S. 247 (1981), requires courts to presume that government entities are

immune from punitive damages unless there is an explicit statutory provision allowing punitive

damages against government entities.  Doe v. County of Centre, Pa., 242 F.3d 437, 456 (3d Cir.

2001) ("City of Newport tells us to assume that Congress intended to retain common law

immunity, unless there is a clear expression of congressional intent to the contrary.").

Plaintiff's claim that he is entitled to recover punitive damages from MHA because he is

suing defendant as a corporation, as opposed to a municipal entity is legally invalid.  MHA is an

entity of the municipality of McKeesport, Pennsylvania.  See Newport, 453 U.S. at 263; see also

Pondexter v. Allegheny County Hous. Auth., No. 2:04-CV-536, 2007 WL 3120289, at *8 (W.D.

Pa. Oct. 23, 2007) (construing claim against county housing authority as a claim against the

county).  Here, plaintiff's assertion of liability against a municipal housing authority is an

19

assertion of liability against the municipality.  There is no explicit statutory provision allowing

punitive damages against the municipality.  Because municipalities are immune from punitive

damages for § 1983 claims, plaintiff's claim for punitive damages under § 1983 will be

dismissed with prejudice.

       **E.**       **Request for Recovery of Attorney's Fees**

Plaintiff is seeking to recover attorney's fees.  Plaintiff, however, is a pro se litigant.

Since plaintiff is not represented by counsel, he cannot recover attorney's fees and his request for

this relief will be denied without prejudice in the event counsel is later retained.  Kay v. Ehrler,

499 U.S. 433 (1991) (noting that a pro se litigant, a nonlawyer, is not entitled to attorney's fees);

Zucker v. Westinghouse Elec., 374 F.3d 222, 227 (3d Cir. 2004) (holding that a successful

shareholder-objector who represented only himself as a pro se attorney in a shareholder

derivative suit is not entitled to an award of attorney's fees).

       **F.**       **Request for Appointment of Counsel**

Plaintiff requested that the court appoint him counsel in this matter.  An indigent civil

litigant,[5] however, has neither a constitutional nor a statutory right to counsel.  Parham v.

Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).  A court may in its discretion request an attorney

to represent an indigent pro se plaintiff in a civil case.  28 U.S.C. § 1915(e)(1).

---

[5]      With respect to whether plaintiff is an indigent litigant, the court is mindful of its
Order of February, 25, 2009, granting him in forma pauperis status under 28 U.S.C. §1915 and
waiving his prepayment of the filing fee and Marshal's fee for service of process. (Docket No. 1.)
Under the same order, the court advised plaintiff that his in forma pauperis status does not relieve
him of any other expenses involved in this lawsuit.  (Id.)

The applicable framework to guide courts in determining whether to request counsel to represent an individual was set forth by the Court of Appeals for the Third Circuit in <u>Tabron v. Grace</u>, 6 F.3d 147 (3d Cir. 1993).  The threshold question is whether the litigant's case has arguable merit in fact or law.  <u>Id.</u> at 155.[6]  Once it is determined that an indigent plaintiff's  claim is of arguable merit, the court should consider the plaintiff's ability to present his own case (in view of such factors as his education, literacy, prior work experience, prior litigation experience, and ability to understand English), the complexity of the legal issues involved, the degree to which factual investigation will be required to prosecute the case and the plaintiff's ability to pursue such investigation, and the extent to which the case will turn on determinations of witness credibility or expert testimony.  <u>Id.</u> at 155-57.

With respect to the <u>Tabron</u> factors, plaintiff did not inform the court about his educational background.  To date, plaintiff has demonstrated the ability to investigate and present relevant facts.  The factual circumstances surrounding  plaintiff's claim do not appear complex.  Plaintiff appears capable of understanding and presenting relevant legal issues.  Plaintiff has not informed the court of any efforts to seek representation.  For these reasons, plaintiff's request for court-appointed counsel will be denied without prejudice.

## Conclusion

For the reasons set forth above, the court will enter the following order.

---

[6]     The court's analysis of the <u>Tabron</u> factors is done expressly without determining the merits of plaintiff's § 1983 claim.

21

**ORDER**

**IT IS HEREBY ORDERED** that the Motion to Dismiss filed by defendant McKeesport Housing Authority (Docket No. 14) is **GRANTED**.  Plaintiff's § 1983 claims, asserting violations of, among others, Section 8 of the USHA and the Due Process Clause of Fourteenth Amendment and his claims for violation of Pennsylvania's constitution are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff's requests for punitive damages are  **DENIED WITH PREJUDICE**.  Plaintiff's requests for attorney's fees and court-appointed counsel (Docket No. 17) are **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff shall have **thirty (30)** days from the date of the entry of this memorandum opinion and order to file an amended complaint making curative amendments; provided that plaintiff can meet the standards of Rule 8 of the Federal Rules of Civil Procedure.  Plaintiff, if he files an amended complaint, must allege facts sufficient to outline the elements of his claims or to permit inferences to be drawn that these elements exist and may not rely upon mere bald assertions or legal conclusions.  Plaintiff is reminded of the requirements of Rule 11 of the Federal Rules of Civil Procedure.

November 17, 2009                                /s/ Joy Flowers Conti

                                                 Joy Flowers Conti

                                                  United States District Judge

cc:    Adam Swift

       2305 Oak Street

       McKeesport, PA 15132

22