## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES SWIFT,                                    )
                                                )
                    Plaintiff,                  )
                                                )
          v.                                    )        Civil Action No. 08-275
                                                )
MCKEESPORT HOUSING AUTHORITY;                   )
JAMES BREWSTER, individually and as             )
Chairman, Board of Directors, McKeesport        )
Housing Authority; GEORGEANNE                   )
CHUCHLA, individually and as manager,           )
McKeesport Housing Authority; DIANE             )
RAIBLE, individually and as administrative      )
officer, McKeesport Housing Authority;          )
SHARON SANETSKY-KISH, individually              )
and as Section 8 coordinator, McKeesport        )
Housing Authority; SHARIL TOMOVCSIK,            )
individually and as Section 8 coordinator,      )
McKeesport Housing Authority; REGIS             )
McLAUGHLIN, individually and as                 )
Inspector, McKeesport Housing Authority,        )
                                                )
                    Defendants.                 )

## MEMORANDUM OPINION

CONTI, District Judge

### I. Introduction

Pending before the court is the motion to dismiss plaintiff's amended complaint (the

"Motion") (Docket No. 24) filed on February 10, 2010, by defendants McKeesport Housing

Authority ("MHA"); James Brewster, individually and as Chairman of the Board of Directors of

MHA ("Brewster"); Georgeanne Chuchla, individually and as a manager for MHA ("Chuchla");

Diane Raible, individually and as an administrative officer for MHA ("Raible"); Sharon

Sanetsky-Kish, individually and as Section 8 coordinator for MHA ("Sanetsky-Kish"); Sharil

Tomovcsik, individually and as a Section 8 coordinator for MHA ("Tomovcsik"); and Regis

McLaughlin, individually and as an inspector for MHA ("McLaughlin", and collectively with

Chuchla, Raible, Sanetsky-Kish, and Tomovcsik, the "individual defendants," and together with

MHA, the "defendants"). In the Motion defendants seek to dismiss all the claims set forth in the

amended complaint (Docket No. 20) filed by James Swift ("plaintiff"), including claims filed

pursuant to 42 U.S.C. § 1983 ("§ 1983"), asserting violations of the Due Process Clause of the

Fourteenth Amendment and the First Amendment, as well as claims under Article 1, § 10, Clause

1 of the United States Constitution. On March 9, 2010, plaintiff filed a response and brief in

opposition to the Motion. (Docket Nos. 26 and 27.) On March 26, 2010, defendants filed a reply

brief. (Docket No. 30.) After considering the parties' submissions, and for the reasons set forth

below, the court will grant the Motion with prejudice in part and without prejudice in part.


## II. Factual Background[1]

Plaintiff is a citizen of the United States and a resident of Allegheny County,

Pennsylvania, who was eligible for and participated in the Housing Choice Voucher Program

(the "voucher program") administered by MHA, pursuant to Section 8 of the United States

Housing Act of 1937, 42 U.S.C. § 1437f, as amended ("Section 8"). (Am. Compl. ¶ 14.) Plaintiff

is a "Born Again Christian" and is legally declared disabled by the United States Social Security

Administration. (Id.)

MHA is a public housing authority and a public corporation. (Id. ¶ 15.) In Pennsylvania,

the Section 8 voucher program is created and organized in accordance with the provisions of the

---

[1] The factual background is a summary of the factual allegations in plaintiff's complaint which must be accepted as true for purposes of ruling on a motion to dismiss. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) ("When considering a Rule 12(b)(6) motion, we are required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.").

Pennsylvania Housing Authorities Law, 35 PA. CONS. STAT. § 1541 et seq. (Id.) Brewster is the Chairman of the Board of Directors of MHA; Chuchla is a manager for MHA; Raible is an administrative officer for MHA; Sanetsky-Kish is a Section 8 coordinator for MHA; Tomovcsik is a Section 8 coordinator for MHA; and McLaughlin is an inspector for MHA and a Chairman of the Board of Directors for the Municipal Authority of the City of McKeesport. (Id. ¶¶ 16-21.)

During the approximately ten years that plaintiff received Section 8 benefits MHA required plaintiff to participate in an annual recertification procedure to ascertain plaintiff's continuing eligibility for those benefits. (Id. ¶¶ 25, 26.) Plaintiff alleges that prior to the anniversary of his 2006 recertification for his Section 8 voucher, Chuchla harassed plaintiff, made derogatory remarks about his faith and health disabilities, lodged false complaints to authorities about him, and threatened to move him from his current residence. (Id. ¶ 28.)

On or about January 4, 2006, Sanetsky-Kish, on behalf of MHA, mailed plaintiff a notice regarding plaintiff's yearly recertification application for the Section 8 voucher program. (Id. ¶ 31.) On January 6, 2006, plaintiff received the notice, with an instruction to return all forms to MHA by mail or in person by January 17, 2006. (Id.) Plaintiff telephoned the offices of MHA and was told that he would have plenty of time to comply, since MHA is required to send out two requests every year. (Id. ¶ 32.)

Pursuant to the January 4, 2006 letter, plaintiff was told his home would have to be re-inspected. (Id. ¶ 34.) Plaintiff alleges that he objected to inspection by McLaughlin, as plaintiff believed McLaughlin, as a public official, had a conflict of interest. (Id. ¶¶ 37, 38.) Plaintiff maintains that he was retaliated against and deprived of his Section 8 benefits for making the objections. (Id.)

On or about February 10, 2006, Tomovcsik, on behalf of MHA, mailed to plaintiff a final request for the recertification information and directed plaintiff to supply the necessary paperwork within five days. (Id. ¶ 39.) On February 13, 2006, plaintiff attempted to comply with MHA's request by hand delivering and dropping off the completed application to what plaintiff believed to be the front door of MHA's offices. (Id. ¶ 40.) Plaintiff alleges this was the same door to which he dropped off his recertification materials in the prior year. (Id. ¶ 41.) MHA's surveillance video cameras recorded plaintiff's delivery on that date. (Id. ¶ 56.)

On February 16, 2006, Tomovcsik sent plaintiff a letter denying receipt of the recertification application and stating that as of February 28, 2006 plaintiff's Section 8 benefits would be terminated. (Id. ¶ 42.) Plaintiff received this letter on February 18, 2006. (Id.) He immediately telephoned MHA's offices and was told that MHA did not receive his application until one day after the February 15, 2006 deadline and that plaintiff should have called and requested more time. (Id. ¶ 44.) On or about February 18, 2006, after his phone conversation with a MHA representative, plaintiff faxed MHA completed copies of the application and requested that MHA internally investigate the whereabouts of the documents he submitted on February 13, 2006. (Id. ¶ 45.)

On February 20, 2006, MHA mailed plaintiff a letter indicating that the only avenue of remedy was for plaintiff to request a grievance hearing. (Id. ¶ 46.) On February 21, 2006, plaintiff sent MHA a letter via facsimile requesting a grievance hearing. (Id. ¶ 47.) On or about February 28, 2006, on behalf of MHA, Raible sent plaintiff a letter granting him a grievance hearing on March 9, 2006. (Id. ¶ 48.) In order to prevent eviction, plaintiff alleges he entered a loan agreement with a social acquaintance in order to pay the balance of his rent that would normally be covered by the voucher. (Id. ¶ 49.)

On March 3, 2006, plaintiff visited MHA's offices and was told by a staff member that his application was received by MHA, but not on time. (Id. ¶ 50.) Plaintiff was also told that the door to which he delivered his recertification application for the past two years was not a part of MHA's offices and that if plaintiff had called, MHA would have given him more time. (Id.)

On March 9, 2006, a grievance hearing was held by a panel made up of Raible, Tomovcsik, and Sanetsky-Kish. (Id. ¶ 52.) At the hearing plaintiff was questioned regarding the nature and extent of his physical disabilities and why he is able to receive Social Security disability payments. (Id. ¶ 53.) Plaintiff was not allowed any opportunity to present supportive documentation or witnesses in his defense to show that he had previously submitted timely and completed recertification applications, despite the fact that members of the panel accused plaintiff of being late with his recertification materials in the past. (Id. ¶¶ 54, 55.) Members of the panel asserted that the door to which plaintiff had delivered his application was not a part of MHA's offices. (Id. ¶ 56.) Plaintiff asked to use the restroom at the meeting and was told to exit the building through the back door and re-enter through the front door. The front door where plaintiff delivered his application had MHA notices in the window, a garbage can with a MHA logo on it, and was in direct view of MHA's surveillance cameras. (Id. ¶ 57.)

At the end of the hearing, plaintiff was told that MHA would issue a written decision within five days, but plaintiff maintains that he did not receive MHA's letter of determination until April 26, 2006. (Id. ¶¶ 58, 59.) Plaintiff alleges this letter was back-dated to March 14, 2006, and failed to provide any information with respect to appellate procedures available to plaintiff. (Id. ¶ 59.) The letter denied plaintiff's request to reinstate his Section 8 voucher. (Id.)

Plaintiff maintains that MHA routinely terminates Section 8 benefits before the initiation or conclusion of timely requested grievance hearings and he alleges that MHA asserted that it

will continue to do so. (Id. ¶ 60.) As an example of such routine termination decisions, plaintiff refers to the case of Lawanna Davis, on behalf of herself and others similarly situated, versus the McKeesport Housing Authority, in the United States District Court for the Western District of Pennsylvania, Civil Action No. 07-198. (Id. ¶ 70.) That action was filed February 16, 2007, and was statistically closed on May 22, 2007. In the complaint, Lawanna Davis alleged:

> Ms. Davis, who, for more than five years has been eligible for and has participated in the MHA's Section 8 Housing Choice Voucher program, is a subject of [the MHA's] unlawful and unconstitutional policy and practice. Although Ms. Davis properly and timely challenged the MHA's decision to terminate the Section 8 benefits, and although Ms. Davis properly and timely requested that the MHA schedule an informal grievance hearing to permit Ms. Davis the opportunity to challenge the legal and factual merits of the MHA's determination, MHA nonetheless summarily terminated Ms. Davis' Section 8 housing subsidy payments to Ms. Davis' landlord for future rent, without first having conducted the informal grievance hearing and without the grievance first being decided by the duly appointed hearing officers.

(Compl. (Docket No. 1, Ex. 2) ¶ 3, Davis v. McKeesport Hous. Auth., No. 07-198 (W.D. Pa. filed February 16, 2007).) Lawanna Davis alleged that she participated in MHA's Section 8 voucher program without incident until 2006. (Id. ¶¶ 3, 24.) On November 7, 2006, she received a letter from MHA indicating that she had an outstanding balance. (Id. ¶ 25.) On December 5, 2006, she received a final notice, and on January 11, 2007, she received a letter advising her that Section 8 assistance would terminate effective January 30, 2007. (Id. ¶¶ 29, 31.) After termination, MHA refused to restore Lawanna Davis's benefits, even though she had not yet been afforded a grievance hearing. (Id. ¶¶ 37, 38.)[2]

---

[2] The court notes that it may take judicial notice of the record of the suit initiated by Lawanna Davis. See Avoyelles Parish Sch. Bd. v. United States, No. 08-1374, 2009 WL 1421985, at *6 n.13 (W.D. La. May 11, 2009) (noting that the court may take judicial notice of the record of a different case, including the averments contained in the complaint).

In this case, plaintiff similarly contends that MHA's policies and practices deprived him of his right to Section 8 benefits in violation of the First and Fourteenth Amendments to the United States Constitution, Section 8, regulations implementing the United States Housing Act and MHA's administrative plan, and interfered with his private leasehold contract in violation of Article 1, § 10, Clause 1 of the United States Constitution. (Id. ¶¶ 61, 69.)

Plaintiff seeks declaratory and injunctive relief, consequential damages, costs, expenses and attorney's fees, and any additional relief that is just. (Id. ¶ 71.) Plaintiff asserts that all defendants, individually and in collusion with each other, violated his rights by engaging in the following actions: 1) unconstitutionally enforcing MHA's longstanding practice of terminating Section 8 benefits before resolution of timely requested grievance hearings; 2) MHA's failing to follow its own written grievance procedures requiring the resolution of proceedings before the termination of benefits; 3) unconstitutionally enforcing MHA's longstanding practice of failing to give Section 8 beneficiaries adequate notice of, and time to comply with, annual recertification procedures; 4) MHA's failing to appoint an impartial hearing officer over plaintiff's grievance hearing; 5) unconstitutionally enforcing MHA's longstanding practice of failing to abide by federal guidelines with respect to housing inspectors' conflicts of interest; 6) unconstitutionally denying plaintiff's recertification despite definitive evidence that plaintiff complied with application procedures in a timely manner; 7) denying plaintiff's recertification on account of his religious views; 8) denying plaintiff's recertification on account of his mental and physical disabilities; 9) MHA's failing to supervise and train its employees to ensure that Section 8 programs were administered in good faith and in accordance with the laws and Constitution of the United States; 10) Brewster exhibiting knowledge or deliberate indifference to the above

constitutional violations; and 11) acting vengefully and with bias toward plaintiff in violation of his constitutional rights. (Id. ¶ 66.)

## III. Procedural Background

Plaintiff filed his original complaint pro se on February 25, 2008, naming only MHA as a defendant. (Docket No. 2.) MHA filed a motion to dismiss with this court on April 3, 2009. (Docket No. 14.) This court granted defendant's motion to dismiss in a memorandum opinion on November 17, 2009, dismissing plaintiff's claims without prejudice and giving leave to plaintiff to file an amended complaint. (Docket No. 18.) Plaintiff, by and through counsel, filed an amended complaint on December 16, 2009, which, in addition to naming MHA as a defendant, sued the individual defendants. (Docket No. 20.) Defendants filed a motion to dismiss the amended complaint on February 17, 2010, and plaintiff responded on March 9, 2010. (Docket Nos. 24, 26.) Defendants and plaintiff filed briefs in support of and in opposition to the Motion, and defendants filed a reply brief to plaintiff's brief in opposition. (Docket Nos. 25, 27, 30.) The Motion is the subject of this opinion.

## IV. Legal Standards

In deciding a motion to dismiss the court is to view the facts alleged in the complaint as true and to draw reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). The court does not base its decision on whether it appears likely that the plaintiff will prevail on the merits. Id. The factual allegations pleaded by a plaintiff need only be a short and plain statement of the claim showing that the pleader is entitled to relief

and giving fair notice to the defendant of what the claim is and the grounds upon which it rests. Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Though detailed factual allegations are not required to survive a Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") motion to dismiss, a complaint must provide "more than labels and conclusions" and a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level" and sufficient to state a claim for relief that is plausible on its face. Id. at 555-56. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

This "plausibility standard" does not, however, heighten the pleading requirements of Federal Rule of Civil Procedure 8(a)(2). Twombly, 550 U.S. at 569 n.14. But it does ask "for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949. In order to cross over the "line between possibility and plausibility" the complaint must plead facts that are more than "merely consistent with" a defendant's liability. Twombly, 550 U.S. at 557. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

Two principles underlie Twombly, and this court's assessment of a motion to dismiss. First, a court need not accept as true allegations that amount to legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Second, a complaint must state a plausible claim for relief in order to survive a Rule 12(b)(6) motion. Id. at

1950. Ascertaining whether a plausible claim for relief has been pled is a context-specific task that requires the court to draw on its judicial experience and common sense. Id.

Generally, courts are to notify plaintiffs that they have leave to amend their complaints unless the amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (reversing district court for failing to grant plaintiff right to amend when the district court did not specifically find that granting leave to amend would be inequitable or futile). Allowing for amendment is consistent with Rule 15(a) of the Federal Rules of Civil Procedure, which provides "leave [to amend] shall be freely given when justice so requires." A court, however, may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility. In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir.1997). The standard of legal sufficiency set forth in Federal Rule of Civil Procedure 12(b)(6) determines whether a proposed amendment would be futile. In re Burlington Coat Factory Litig., 114 F.3d at 1434. An amendment is futile where the complaint, as amended, would fail to state a claim upon which relief could be granted. Id.; see Cowell v. Palmer Twp., 263 F.3d 286, 296 (3d Cir. 2001) (noting that failure to overcome the time bar of a statute of limitations renders a proposed amendment futile).

## V. Discussion

Defendants make four arguments. First, defendants argue that plaintiff's claims against the individual defendants in their personal capacities are barred by the statute of limitations in that the individual defendants were not named in the original complaint and the amended complaint was filed after the statute of limitations had run against plaintiff's claims. (Motion ¶ 7.) Second, defendants argue that plaintiff failed to state a plausible claim for relief against MHA

under the Fourteenth Amendment. (Id. ¶ 10.) Third, defendants argue that plaintiff failed to state a plausible claim for relief based upon retaliation for the exercise of plaintiff's First Amendment rights or based upon discrimination against plaintiff's disabilities. (Id.) Fourth, defendants argue that plaintiff failed to state a claim under Article 1, § 10, Clause 1 of the United States Constitution ("Contracts Clause"). (Id.)

This court will separately address, 1) the individual defendants' statute of limitations defense, 2) the sufficiency of the complaint with respect to the Contracts Clause claim, 3) the sufficiency of the complaint with respect to the First Amendment retaliation claim, 4) the sufficiency of the complaint with respect to any claim based upon discrimination, and 5) plaintiff's claim against MHA for violation of his right to due process under the Fourteenth Amendment. The court will dismiss with prejudice plaintiff's claims against the individual defendants because they are barred by the applicable statute of limitations. Plaintiff's claims under the Contracts Clause, the First Amendment, the Due Process Clause of the Fourteenth Amendment, and any claims based on discrimination against plaintiff's disabilities will be dismissed without prejudice.

**A. Statute of Limitations Defense**

Plaintiff's amended complaint was filed on December 16, 2009. The original complaint named MHA as the sole defendant, but the amended complaint includes several individual defendants associated with MHA in various capacities. The individual defendants argue that because they were not joined as parties to the action until after the statute of limitations ran on plaintiff's § 1983 claims, they should be dismissed from the action. This court agrees.

State law controls which statute of limitations is applied in a § 1983 action. Jennings v. Shuman, 567 F.2d 1213, 1216 (3d Cir. 1977); Elliott Reihner Siedzikowski & Egan, P.C. v. Pa.

Employees Benefit Trust Fund, 161 F.Supp.2d 413, 420 (E.D. Pa. 2001), aff'd 29 F. App'x 838 (3d Cir. 2002). In Pennsylvania, a § 1983 claim is subject to a two-year statute of limitations.[3] Id. at 421. Though the statute of limitations for § 1983 claims is borrowed from state law, when a § 1983 claim accrues is governed by federal law. Accrual occurs "when the plaintiff has a 'complete and present cause of action[,]' that is, when 'the plaintiff can file suit and obtain relief.'" Wallace v. Kato, 549 U.S. 384, 388 (2007) (quoting Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997)). The individual defendants note that the incidents cited in plaintiff's amended complaint occurred, at the latest, from January 6, 2006 to April 26, 2006. Therefore, plaintiff's claim accrued at least by April 26, 2006 and he had until April 26, 2008 to file suit against the individual defendants, which he failed to do. (See Am. Compl. ¶ 59.)

In response, plaintiff relies upon the continuing violations doctrine to argue that because the wrongs committed against him are ongoing to the present day, the statute of limitations should be tolled. "The continuing violations doctrine is an 'equitable exception to the timely filing requirement.'" Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting West v. Phila. Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)). Courts in the Third Circuit consider the doctrine to be a narrow exception that is often invoked but infrequently applied. See Voices for Independence v. Pa. Dep't of Transp., No. 06-78, 2007 WL 2905887, at *8 (W.D. Pa. Sept. 28, 2007).

The focus of the continuing violations doctrine "is on affirmative acts of the defendants." Cowell, 263 F.3d at 293. A defendant's refusal to correct an earlier disputed action is not the same as an affirmative act of a continuing violation. See id. A "'continuing violation is

---

[3] The court does not address the statute of limitations for plaintiff's Contract Clause claim because that claim is dismissed on other grounds.

occasioned by continual unlawful acts, not continual ill effects from an original violation.'" Id.
(quoting Ocean Acres Ltd. v. Dare County Bd. of Health, 707 F.2d 103, 106 (4th Cir. 1983)); see
Herbert v. Reinstein, 976 F. Supp. 331, 337 (E.D. Pa. 1997).

"In order to use equitable tolling permitted by the 'continuing violation' theory, the
Plaintiff must show two things: (1) at least one act occurred within the filing period; and (2) the
[violation] is not the occurrence of 'isolated or sporadic acts' of intentional [wrongdoing] but a
'persistent, on-going [sic] pattern.'" Porter v. Intermediate Unit I, No. 06-CV-1145, 2007 WL
2597911, at *5 (W.D. Pa Sept. 5, 2007) (quoting West, 45 F.3d at 754-55). In distinguishing
between whether the alleged violations are "isolated or sporadic acts" or part of a "persistent, on-
going [sic] pattern" courts consider three factors:

> (i) subject matter – whether the violations constitute the same type
> of discrimination; (ii) frequency; and (iii) permanence – whether
> the nature of the violations should trigger the [plaintiff's]
> awareness of the need to assert her rights and whether the
> consequences of the act would continue even in the absence of a
> continuing intent to discriminate.

West, 45 F.3d at 755 n.9 (internal citation omitted). Consideration of the degree of permanence
is the most important of the factors. Cowell, 263 F.3d at 292.

In his amended complaint, plaintiff does not allege any affirmative act of the defendants
that occurred after April 26, 2006. At best, he notes that currently he "is threatened with the
continued deprivation of his rights." (Am. Compl. ¶ 61.) Plaintiff also mentions in his amended
complaint and in his brief in opposition that the April 26, 2006 letter "did not provide any
mention of an appellate procedure or otherwise inform Plaintiff as to his rights or remedies." (Id.
¶ 59.) Plaintiff's brief in opposition notes that "[i]n spite of Plaintiff's best efforts, the
individually named Defendants have effectively blocked his access to administrative relief and

have allowed his case to languish." (Br. in Opp'n at 14.) Yet plaintiff does not allege what actions those defendants took to block his "best efforts."

Plaintiff's complaint does not include sufficient factual allegations to implicate the first requirement for invoking the continuing violations doctrine. He did not allege with respect to any individual defendant that "at least one act has occurred within the filing period." <u>Porter</u>, 2007 WL 2597911, at *5.

Of the three factors used in distinguishing between whether an act is part of a larger pattern or is an isolated instance, the most important is the act's "permanence." <u>Cowell</u>, 263 F.3d at 292. The last affirmative act alleged by plaintiff is the April 26, 2006 letter, which informed plaintiff of MHA's determination to deny his request to reinstate his Section 8 voucher. At least upon receipt of the letter plaintiff knew that his rights were allegedly violated. By that time, plaintiff should have known that "the consequences of the act [denial of recertification of the Section 8 voucher] would continue even in the absence of" later violations. <u>Id.</u> Here the statute of limitations should not be equitably tolled because the plaintiff upon receipt of the letter knew he would be harmed. The violations alleged in the events leading up to and including the April 26, 2006 letter were apparent and permanent.

Because "the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims" it cannot be invoked in the present case. <u>Id.</u> at 295. Therefore, plaintiff's claims which accrued on or before April 26, 2006 against the individual defendants are dismissed with prejudice.

**B. Contracts Clause Claim**

Plaintiff did not sufficiently state a claim under the Contracts Clause of the United States Constitution. The Contracts Clause states in relevant part: "No State shall . . . pass any . . . Law

impairing the Obligation of Contracts." U.S. CONST. Art. 1, § 10. In order to state a claim under the Contracts Clause, plaintiff must allege that (1) a contractual right existed, (2) a change in state law impaired the contract, and (3) the impairment was substantial. Transp. Workers Union of Am. v. Se. Pa. Transp. Auth., 145 F.3d 619, 621 (3d Cir. 1998) (citing Gen. Motors Corp. v. Romein, 503 U.S. 181, 186 (1992)).

Plaintiff alleges that defendants interfered with his privately contracted leasehold rights. (See Am. Compl. ¶¶ 66, 69.) This allegation is insufficient for plaintiff to bring a claim under the Contracts Clause. Plaintiff asserted that a contractual right existed. (Id.) Plaintiff, however, failed to allege sufficient facts for this court to conclude that the other two necessary elements to a Contracts Clause claim could be met.

First, plaintiff did not allege that a *change* in law impaired his leasehold contract. Plaintiff asserted that defendants' policies and procedures are "tantamount to law" and interfered with his contractual rights. (Br. in Opp'n to Motion at 13.) Acts of state legislation can include "by-laws and ordinances of municipal corporations that constitute 'an exercise of legislative power delegated by the legislature to the corporation as a political subdivision of the State, having all the force of law within the limits of the municipality.'" Skoutelas v. Port Auth. of Allegheny County, No. 2:07cv1077, 2008 WL 1773876, at *3 (W.D. Pa. Apr. 16, 2008) (quoting New Orleans Waterworks Co. v. La. Sugar Ref. Co., 125 U.S. 18, 30 (1888)). Plaintiff must have factual support to assert that MHA's custom of terminating Section 8 benefits prior to a grievance hearing is "'so permanent and well-settled' as to virtually constitute law" for purposes of municipal liability, see McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990)). Plaintiff's assertions in the

amended complaint are in the nature of conclusions, which are not sufficient. There are insufficient factual allegations to show a plausible claim exists.

Second, plaintiff failed to allege facts showing a substantial impairment of his leasehold contract. He only alleges a "possibility of eviction" due to the termination of his Section 8 benefits. Plaintiff failed to include allegations of fact to show MHA, even assuming that its actions could be considered state law, substantially impaired his private leasehold contract. Therefore, his Contracts Clause claim must be dismissed without prejudice.

## C. § 1983 Claims

Plaintiff asserts violations to his due process rights under the Fourteenth Amendment and to his free speech and free exercise rights under the First Amendment. (Am. Compl. ¶ 63.) Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Id.[4]

### 1. General Framework

§ 1983 authorizes an injured plaintiff to assert a claim for relief against a person who violated the plaintiff's federally protected rights while acting under color of state law. § 1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

---

[4] Plaintiff only explicitly mentions the Fourteenth Amendment and the United States Housing Act in connection with his § 1983 claims. If plaintiff is to assert a First Amendment retaliation claim against MHA, it must be pursuant to § 1983, and not directly through any provision of the United States Constitution. The First Amendment is applicable to actions by the States through the Fourteenth Amendment Due Process Clause. See Gitlow v. New York, 268 U.S. 652, 666 (1925). Plaintiff may not circumvent the requirements of § 1983 by attempting to assert claims directly under the Fourteenth Amendment or other amendments. See Jett v. Dallas Independent School Dist., 491 U.S. 701, 735 (1989).

In order to state a claim pursuant to § 1983 a plaintiff must allege the following three elements: 1) the defendant was a person; 2) the defendant acted under color of state law; and 3) the defendant's actions caused a deprivation of a right guaranteed by the United States Constitution or a federal law. Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997). Given this court's holding that plaintiff's claims against the individual defendants are barred by the statute of limitations, the sole remaining defendant is MHA.

"Municipalities and other local government units [are] to be included among those persons to whom § 1983 applies." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). MHA, as a public housing authority and municipal corporation, is a person for purposes of § 1983. Solomon v. Phila. Hous. Auth., 143 F. App'x 447, 456 n.14 (3d Cir. 2005) (holding that the Philadelphia Housing Authority is a person for § 1983). A municipality, however, is not liable for the actions of its employees or agents under § 1983 unless the plaintiff is able to establish that the violation of his constitutional or federal rights was attributable to the enforcement of a municipal policy or custom. Monell, 436 U.S. at 694.

## 2. Municipal Liability

A municipality may only be held liable under § 1983 when the alleged violation is attributable to the enforcement of a municipal policy, practice, or decision of a final municipal policymaker. City of St. Louis v. Praprotnik, 485 U.S. 112, 122-23 (1988). There is no *respondeat superior* theory of municipal liability, nor may a municipality be held vicariously liable for the actions of its employees under § 1983. Monell, 436 U.S. at 691. On the contrary, a municipality is not liable under § 1983 unless its policy or custom is the "moving force" behind the constitutional violation. Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006). In order to be

considered a "moving force" the policy or custom must be shown to have a direct causal link to the alleged constitutional deprivation. <u>City of Canton v. Harris</u>, 489 U.S. 378, 389-90 (1989).

In addition to causing the deprivation, the policy or custom must reflect or result in "deliberate indifference" to the rights of people. <u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 244 (3d Cir. 2004). "It is a particularly willful type of recklessness that is inherent in the deliberate indifference standard." <u>Simmons v. City of Phila.</u>, 947 F.2d 1042, 1060 n.13 (3d Cir. 1991). In order to assert a constitutional violation against a municipality, a plaintiff must show that deliberate "indifference resulted either from a decision officially adopted and promulgated or from a permanent and well-settled practice." <u>Id.</u> at 1059. A plaintiff must present "evidence of such indifference on the part of . . . officials with the authority to make municipal policy." <u>Id.</u> Thus, "absent the conscious decision or deliberate indifference of some natural person, a municipality, as an abstract entity, cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom, or a failure to train." <u>Id.</u> at 1063.

The Court of Appeals for the Third Circuit has noted:

> Our jurisprudence is clear that "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom."

<u>McTernan</u>, 564 F.3d at 657 (quoting <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996)). The "two path track" to municipal liability must be premised on a policy or custom. <u>Id.</u> A policy is made "when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict.'" <u>Andrews</u>, 895 F.2d at 1480 (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S 469, 481 (1986)). A custom is a practice "'so permanent and well-settled' as to virtually constitute law." <u>Id.</u> (citations omitted).

"Custom requires proof of knowledge and acquiescence by the decisionmaker." <u>McTernan</u>, 564 F.3d at 658.

### 3. First Amendment Retaliation Claim

Plaintiff alleged that the termination of his Section 8 benefits was an act of retaliation by MHA in response to his exercise of his First Amendment rights. In order for MHA to be liable for violating plaintiff's First Amendment rights, plaintiff must show that violation was caused by the implementation of a policy or custom of MHA. <u>Monell</u>, 436 U.S. at 694. Plaintiff has not alleged sufficient facts in order for this claim to survive defendants' Motion under <u>Twombly</u> and <u>Iqbal</u>.

In order to demonstrate municipal liability plaintiff must show that the alleged First Amendment violation was either 1) "pursuant to a formal government policy or a standard operating procedure long accepted within the government entity"; 2) committed by an "individual [who] has policy making authority rendering his or her behavior an act of official government policy"; or 3) committed by a subordinate but an official with authority "ratified" the action, "rendering such behavior official for liability purposes." <u>McGreevy v. Stroup</u>, 413 F.3d 359, 367 (3d Cir. 2005) (citations omitted).

Plaintiff alleges that Chuchla made derogatory comments about his faith and that she eventually persuaded Brewster, Raible, Tomovcsik, Sanetsky-Kish, and McLaughlin to deny plaintiff's recertification on account of his religious views. (Am. Compl. ¶¶ 28, 66(g).) Plaintiff asserts in his complaint, but not in his brief, that his benefits were terminated because he objected to McLaughlin inspecting plaintiff's home. The allegation was based upon plaintiff's belief that a conflict of interest existed insofar as McLaughlin also served as a board member for the City of McKeesport. (<u>Id.</u> ¶ 38.)

Plaintiff asserts that he meets the three elements of a First Amendment retaliation claim: 1) plaintiff engaged in protected activity; 2) MHA responded with retaliation; and 3) plaintiff's protected activity was the cause of MHA's retaliation. Even assuming that plaintiff's factual allegations meet these elements, his claim still fails against MHA—the sole remaining defendant. Plaintiff needed to include factual allegations sufficient to implicate that a violation of his First Amendment rights was pursuant to a policy or custom of MHA. Plaintiff's conclusory remarks in his amended complaint and his brief in opposition failed to include sufficient factual allegations to support a claim that is plausible on its face. Twombly, 550 U.S. at 555-56.

Plaintiff did not include factual allegations to show the first method is applicable, i.e. that the alleged retaliatory termination was "pursuant to a formal government policy or a standard operating procedure long accepted within" MHA. With respect to the second method—the violation was committed by an "individual [who] has policy making authority rendering his or her behavior an act of official government policy"—plaintiff did not allege facts to show that any individual with policymaking authority denied his recertification or terminated his benefits on account of plaintiff's religion or speech. Finally, as to the third method—the retaliation was committed by a subordinate but an official with authority "ratified" the action, making the action official—plaintiff failed to alleged facts showing that any official with policymaking authority ratified the alleged actions of Tomovcsik, Chuchla, Raible, and Sanetsky-Kish. (Am. Compl. ¶ 66.)

At most, plaintiff asserts that Brewster—assuming he had policymaking authority—acted with others in denying plaintiff's recertification on account of plaintiff's religious views. (Id. ¶ 66(g).) This allegation as to Brewster, however, is conclusory and need not be accepted as true. Twombly, 550 U.S. at 555. Plaintiff failed to allege sufficient facts to allow this court to draw a

reasonable inference that Brewster was involved in the alleged violations of plaintiff's First Amendment rights. Rather, plaintiff mentions Brewster's conduct with regard to the First Amendment claims in a manner akin to "formulaic recitations of the elements of a cause of action." Id.

Moreover, in order for the decisions of Tomovcsik, Chuchla, Raible, and Sanetsky-Kish to be attributable to the MHA, "the authorized policymakers [must] approve [the] decision and the basis for it. . . ." Praprotnik, 485 U.S. at 127. "Simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of authority to make policy." Id. at 130. Again, assuming Brewster as Chairman of the Board had policymaking authority, plaintiff did nothing more than flatly allege that "Brewster knew about, and was deliberately indifferent to, the constitutional violations as alleged herein." (Am. Compl. ¶ 66(j).) He did not allege facts sufficient for this court to infer that Brewster "knowingly acquiesce[d]" to the actions of his subordinates and their alleged unconstitutional basis for such actions. Andrews, 895 F.2d at 1481 (citing Praprotnik, 485 U.S. at 127).

Because plaintiff failed to plead sufficient facts to show that the alleged retaliation undertaken by MHA was an implementation of a policy or custom, his First Amendment claims must be dismissed without prejudice.

### 4. Disability Discrimination Claim

Plaintiff alleges that he was denied recertification into the Section 8 program on account of his mental and physical disabilities. (Am. Compl. ¶ 66(h).) In the complaint, however, plaintiff did not allege sufficient facts for this claim to "raise a right to relief above the speculative level," Twombly, 550 U.S. at 555-56. Plaintiff merely noted that members of the grievance hearing panel asked him questions about the nature and extent of his disabilities and

asserted that his disabilities were a reason his recertification was denied. (Am. Compl. ¶ 53, 66(h).) Like plaintiff's First Amendment claims, this discrimination claim against the municipality did not contain sufficient factual allegations to support municipal liability. For these reasons, any discrimination claims asserted by plaintiff must be dismissed without prejudice.

### 5. Fourteenth Amendment Due Process Claim

"When a plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process," the Court of Appeals for the Third Circuit employs the "familiar two-stage analysis" that considers (1) whether the "asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property'"; and (2) whether the "procedures available provided the plaintiff with 'due process of law.'" Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." Id.

Plaintiff's Section 8 voucher, like welfare benefits, is a property interest for purposes of due process. See Goldberg v. Kelly, 397 U.S. 254, 262 (1970). "In order to determine whether an individual has been deprived of his property without due process 'it is necessary to ask what process the State provided, and whether it was constitutionally adequate.'" Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 138 (3d Cir. 2010) (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)). "[A] pre-deprivation hearing is generally required before a state seizes a person's property . . . ." Id.

Plaintiff alleged that MHA, after giving inadequate notice of recertification procedures, terminated his Section 8 benefits, even though plaintiff complied with the procedures in a timely manner. (Am. Compl. ¶¶ 1, 40.) Plaintiff alleges that MHA failed to follow its own written

procedures for notification regarding recertification and that, upon plaintiff's supposed failure to comply, MHA terminated his benefits more quickly than MHA's written procedures allow. (Id. ¶¶ 29, 30, 43. 66(b), (c).) Plaintiff alleges that the post-deprivation hearing he was given was in fact a "sham" in that it did not include an impartial hearing officer, and plaintiff was not provided the opportunity to present evidence on his behalf. (Id. ¶¶ 51, 54, 66(d).) Finally, plaintiff asserts that he followed the process laid out by MHA, and that if any further procedures exist, he was not informed of them by MHA. (Id. ¶¶ 47, 59.)

Plaintiff alleged sufficient facts to state a claim under the Due Process Clause of the Fourteenth Amendment. The question that remains is whether he sufficiently alleged facts to state a claim against MHA under a theory of municipal liability. Plaintiff must show that the deprivation of his benefits without due process was undertaken pursuant to an official policy or an unofficial custom of MHA. As with his First Amendment claim, plaintiff must show that the Fourteenth Amendment due process violation was either 1) "pursuant to a formal government policy or a standard operating procedure long accepted within the government entity"; 2) committed by an "individual [who] has policy making authority rendering his or her behavior an act of official government policy"; or 3) committed by a subordinate but an official with authority "ratified" the action, "rendering such behavior official for liability purposes." McGreevy, 413 F.3d at 367 (3d Cir. 2005). The court will analyze all three methods.

### a. First method – formal government policy or operating procedure

With respect to the first method – pursuant to a long accepted standard operating procedure – plaintiff alleges that MHA has a custom of terminating Section 8 benefits before conducting grievance hearings, and he asserted that MHA said that it plans on continuing to do so. (Am. Compl. ¶ 60.) Assuming the truth of this allegation, as the court must, the next question

is whether deliberate "indifference resulted from [this] permanent and well-settled practice."

<u>Simmons</u>, 947 F.2d at 1059. Plaintiff alleged that because of the termination of his benefits he was forced to enter into a loan agreement with a social acquaintance in order to pay his monthly rent and that his ability to pay for other living expenses was greatly diminished. (Am. Compl. ¶ 67.) Depriving qualified Section 8 beneficiaries of an important source of income without due process, if true, could show deliberate indifference on the part of MHA.

Plaintiff must present "evidence of such indifference on the part of . . . officials with the authority to make municipal policy." <u>Simmons</u>, 947 F.2d at 1059. Similarly, "[c]ustom requires proof of knowledge and acquiescence" by such officials. <u>McTernan</u>, 564 F.2d at 658. Plaintiff alleged that MHA, particularly through Brewster, the Chairman of its Board of Directors, had knowledge about the custom of terminating the benefits of persons with Section 8 vouchers before grievance hearings through the federal court case initiated by Lawanna Davis against the MHA, which was brought in the Western District of Pennsylvania. (Am. Compl. ¶ 70; <u>see</u> <u>Davis v. McKeesport Hous. Auth.</u>, No. 07-198 (W.D. Pa. filed  Feb. 16, 2007).)  Plaintiff implies that this prior lawsuit placed Brewster on notice on the MHA's alleged practice of inappropriately denying Section 8 vouchers.

Defendants argue, however, that because "the <u>Davis</u> case did not result in a judicial determination that the McKeesport Housing Authority had engaged in any improper conduct," it "does not constitute factual support for a policy and/or custom on the part of the McKeesport Housing Authority." (Reply Br. at 2.)  Defendants' argument in this case is unavailing primarily because plaintiff did not cite Lawanna Davis's case in order to show that a custom of MHA existed.  As already explained, plaintiff asserts sufficient factual allegations to establish a custom or policy. Plaintiff instead cites the case of Lawanna Davis to show that MHA's policymaking

officials, specifically Brewster, knowingly acquiesced to a practice that risks violation of the constitutional rights. Municipal liability can be "established by proving that identified and relevant policy makers within the municipal unit had notice or knowledge of a risk of deprivation of rights through a pattern of prior deprivations, and by demonstrating that the policy makers acted with 'deliberate indifference' to the known risk." Basile v. Elizabethtown Area Sch. Dist., 61 F. Supp. 2d 392, 405-06 (E.D. Pa. 1999).

The "seminal case in the area of failure to investigate citizen complaints" is Beck v. City of Pittsburgh. Brice v. City of York, 528 F. Supp. 2d 504, 518 (M.D. Pa. 2007). The Beck decision involved a police officer who used of excessive force to arrest the plaintiff. Beck, 89 F.3d at 968. Within a three-year period prior to the plaintiff's arrest, four excessive force complaints were filed against that officer, and by the time of the plaintiff's trial, six total complaints were filed. Id. at 969-70. The complaints demonstrated a pattern of abusive behavior by the officer, and even one internal investigation found that the allegations of the complainant were "believable." Id. at 969. The internal investigations of the complaints, however, resulted in no discipline against the officer. Id. The complaint procedure was riddled with systemic problems. One such problem was the handling of each complaint as an isolated occurrence. This failed to apprise city policymakers of the officer's pattern of conduct. Id. at 973. The Court of Appeals for the Third Circuit concluded that, "[b]ecause the complaints . . . came in a narrow period of time and were of similar nature, a reasonable jury could have inferred that the Chief of Police knew, or should have known, of [the officer]'s propensity for violence when making arrests." Id. at 974.

This court finds the plaintiff's case is distinguishable from Beck. Although the allegations with respect to MHA contained in the complaint filed by Lawanna Davis are virtually

identical to those raised by plaintiff in this case, the critical actions alleged in Lawanna Davis's complaint occurred in late 2006 and in 2007. Lawanna Davis's complaint was filed in 2007. In this case, the alleged constitutional violations occurred in April 2006 at the latest. The lawsuit initiated by Lawanna Davis, therefore, could not have provided MHA policymakers with notice prior to the alleged deprivation of plaintiff's Fourteenth Amendment rights.

The court also notes that paragraph 66(j) of plaintiff's amended complaint reads: "Defendant Brewster knew about, and was deliberately indifferent to, the constitutional violations as alleged herein, and as Chairman of the [MHA] Board, was responsible for approving the unconstitutional polices/practices alleged herein." (Am. Compl.¶ 66(j).) The court finds that these statements are not factual allegations; rather, they are legal conclusions. Plaintiff fails to identify the specific policies or practices Brewster approved. A legal conclusion is not sufficient to establish that a policymaker knew of and acted with deliberate indifference to unconstitutional actions. See Revene v. Charles County Comm'rs, 882 F.2d 870, 875 (4th Cir. 1989). The court concludes that plaintiff's allegations in the amended complaint are factually insufficient to implicate a basis for establishing municipal liability under the first method.

**b. Second method – decision by individual with policymaking authority**

In order to survive the motion to dismiss under the second method, plaintiff must allege sufficient factual allegations that, when viewed in plaintiff's favor, establish that an MHA employee with policymaking authority committed the due process violation. Plaintiff argues that he raised sufficient allegations. He alleged that Tomovcsik was the individual responsible for issuing the unconstitutional notice which terminated his Section 8 benefits on February 18, 2006. Plaintiff alleged that Tomovcsik, Raible, and Sanetsky-Kish were the individuals responsible for

conducting the March 9, 2006 sham hearing. Plaintiff alleged that Raible signed the March 14, 2006 decision of the panel which denied his request for re-instatement.

"[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur, 475 U.S. at 480. Municipal liability, however, only attaches "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Id. at 481. Whether an official had final policymaking authority is determined by state law. Id. at 483.

Under Pennsylvania law, specifically the Pennsylvania Housing Authorities Law, 35 PA. CONS. STAT. §§ 1541 et seq., a housing authority is governed by a Board of Commissioners which has final policymaking authority. See Solomon, 143 F. App'x at 456. Based upon the factual allegations of the complaint, the only defendants who were members of MHA's Board of Directors were Brewster and McLaughlin. Plaintiff's amended complaint, however, contains no factual allegations that Brewster made a final decision that resulted in the termination of his benefits. Similarly, despite plaintiff's allegations that McLaughlin operated under a conflict of interest when he inspected plaintiff's home, plaintiff fails to allege that McLaughlin made a final decision that affected plaintiff's rights. The actions or decisions by the other individuals, standing alone, are not sufficient. See Falkowski v. North Fork Housing Alliance, Inc., No. 08-CV-2550, 2009 WL 3174029, at *13 (E.D.N.Y. Sept. 30, 2009) (under New York law, dismissing a procedural due process claim against a housing authority because the plaintiff failed to allege that the housing authority's executive director or president of its board had final policymaking authority); Fusaro v. Hialeah Hous. Auth., 33 F. Supp. 2d 1354, 1361-62 (S.D. Fla. 1999) (under Florida law, holding that a housing authority's board of directors, not its executive director, had final policymaking authority); Crisonino v. New York Hous. Auth., 985 F. Supp.

385, 390 (S.D.N.Y. 1997) (under New York law, holding that a housing authority's board of directors, not a supervisor, had final policymaking authority). Furthermore, there are no allegations that MHA's Board of Directors delegated policymaking authority to other individuals. "Simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." Praprotnik, 485 U.S. at 130. The court therefore concludes that plaintiff did not set forth sufficient factual allegations to establish municipal liability under the second method.

### c. Third method – ratification by individual with policymaking authority

With respect to the third method, a municipality is liable under § 1983 if an authorized official ratifies an unconstitutional action of a subordinate. Such ratification renders the subordinate's conduct official for liability purposes. McGreevy, 413 F.3d at 367. For example, "if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker," then municipal liability would attach. Praprotnik, 485 U.S. at 130. "But the mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority." Id.

With respect to ratification, plaintiff again focuses upon Tomovcsik, Raible, and Sanetsky-Kish, just as plaintiff did with respect to the second method. Plaintiff argues that he alleged those three individuals conducted the March 9, 2006 sham hearing, and Raible issued the final determination. As already explained, these individuals do not have final policymaking authority.

Plaintiff additionally argues, however, that he alleged Raible's final determination was ratified by Brewster. Plaintiff cites to paragraph 66(j) of his amended complaint in support of this argument. As already analyzed, paragraph 66(j) contains a legal conclusion, which is

insufficient to establish that a policymaker ratified unconstitutional conduct. <u>See</u> <u>Martinez v.</u> <u>City of Orlando</u>, No. 6:09-cv-802, 2009 WL 3048486, at *8 (M.D. Fla. Sept. 21, 2009) (alleging in a complaint that a city's "wide-spread practices constitute a de facto policy, which the municipal policymakers have ratified through their indifference" is a legal conclusion and is insufficient to establish a custom, policy, or practice of the city); <u>LaBella Winnetka, Inc. v.</u> <u>Village of Winnetka</u>, No. 07 C 6633, 2008 WL 696902, at *7 (N.D. Ill. Mar. 13, 2008) (allegations that the policymakers "knew or should have known of the selective enforcement of ordinances" and were aware of "discriminatory, unconstitutional conduct" but "knowingly and intentionally" failed to act are "bare allegations–peppered with legal conclusions–[that] do not state a plausible entitlement to relief under the ratification theory").

Plaintiff fails to alleged sufficient facts that, when view in the light most favorable to plaintiff, establish municipal liability under any of the three methods. The court therefore concludes that plaintiff failed to plead sufficient factual allegations to support a Fourteenth Amendment due process claim. With respect to this claim, the Motion is granted without prejudice.

## VI. Conclusion

For the reasons set forth above, the Motion will be granted with prejudice in part and without prejudice in part. An appropriate order will be entered. With respect to those claims upon which the Motion is granted without prejudice, plaintiff shall have **thirty (30)** days from the date of the entry of this opinion and the accompanying order to file a second amended complaint.

Dated: June 22, 2010

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge